FILED

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

2026 JUL 31 ⊃ 1: 16

KAREN M. GIBBS,
     Plaintiff,

v.

BRITISH AIRWAYS PLC,

Defendant.

Civil Action No. _1:26CV2349_

COMPLAINT AND JURY DEMAND

Plaintiff Karen M. Gibbs, proceeding pro se, alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action under the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 (the "Montreal Convention"), for bodily injury caused by an accident aboard British Airways Flight 217 during international carriage from London Heathrow Airport to Washington Dulles International Airport on August 1, 2024.

2. While Plaintiff was seated as an uninvolved passenger, a British Airways cabin-crew member intervening in a disturbance struck Plaintiff in the head. The blow caused immediate pain, blurred vision, dizziness, confusion, and other symptoms. Plaintiff was later evaluated aboard the aircraft by a physician passenger and required wheelchair assistance after arrival at Dulles.

3. Plaintiff seeks compensatory damages for bodily injury, medical expenses, lost income and benefits, diminished earning capacity, pain and suffering, and other losses recoverable under the Montreal Convention.

1

## II. JURISDICTION, PERSONAL JURISDICTION, AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the action arises under a treaty of the United States.

5. The United States and the United Kingdom are States Parties to the Montreal Convention, and the carriage at issue was international carriage within Article 1.

6. Article 33(1) authorizes an action in the territory of a State Party at the place of destination. Washington Dulles International Airport, located in this District, was the destination stated in Plaintiff's contract of carriage for Flight 217.

7. British Airways purposefully conducts substantial and recurring passenger-airline operations in Virginia, including regularly operating flights to and from Dulles, transporting passengers to Virginia, selling and performing contracts of carriage whose destination is Virginia, and employing or using personnel and facilities in Virginia to complete those services.

8. Plaintiff's claim arises out of and relates to British Airways' Virginia-directed activities because British Airways contracted to transport Plaintiff to Dulles, operated the Virginia-bound flight on which its employee struck Plaintiff, continued the allegedly inadequate medical response through arrival, and completed the carriage and disembarkation in this District.

9. Personal jurisdiction is authorized by Virginia Code § 8.01-328.1(A)(1) and is consistent with due process. British Airways could reasonably anticipate being required to answer in Virginia for bodily injury caused during its performance of a contract to transport a passenger to Virginia.

10. Venue is proper under Article 33(1) of the Montreal Convention and 28 U.S.C. § 1391 because Dulles was the place of destination and a substantial part of the events completing the carriage, including Plaintiff's arrival and disembarkation in an injured condition, occurred in this District.

### III. PARTIES

11. Plaintiff Karen M. Gibbs is a resident of Silver Spring, Maryland. At the time of the incident, she was a senior federal attorney at the GS-15, Step 10 level and a retired Captain in the United States Navy.

12. Defendant British Airways PLC is a foreign air carrier organized under the laws of England and Wales. It operates scheduled international passenger service between London Heathrow Airport and Washington Dulles International Airport and conducts recurring commercial airline operations in Virginia.

### IV. FACTUAL ALLEGATIONS

13. On August 1, 2024, Plaintiff was a fare-paying passenger on British Airways Flight 217 from London Heathrow Airport to Washington Dulles International Airport. She was seated in aisle seat 23H.

14. During the flight, a disruptive passenger seated in or near row 24 became involved in a disturbance with the cabin crew.

15. Plaintiff was not involved in the disturbance. She was seated and was an innocent bystander.

16. A British Airways flight attendant identified to Plaintiff as "Lance" attempted to intervene in the disturbance and delivered a forceful blow to the top of Plaintiff's head.

17. The impact was unexpected, unusual, external to Plaintiff, and not part of the normal operation of the aircraft.

18. Passengers near Plaintiff, including Kanja Muchoki in seat 23G and Derrick Thomas in seat 23J, observed the event and its immediate aftermath.

19. Immediately after the blow, Plaintiff experienced head pain, blurred vision, dizziness, disorientation, and distress. She requested assistance and medical attention.

20. The cabin crew supplied ice or a cold compress but did not promptly summon a medical professional. Plaintiff repeatedly requested that the crew page for a doctor.

21. Approximately ninety minutes after the incident, the crew made an onboard request for medical assistance. A passenger who represented that he was an emergency-room physician and surgeon evaluated Plaintiff and advised that her symptoms were consistent with a concussion. Oxygen and rest were recommended.

22. Plaintiff's blurred vision, pain, dizziness, and confusion persisted during the remainder of the flight.

23. British Airways did not arrange for emergency medical personnel to meet Plaintiff at the gate at Dulles.

24. Upon arrival, Plaintiff could not safely walk through the airport without assistance and was transported by wheelchair through the terminal and to the curb, where her son met her.

25. Plaintiff promptly submitted a written report and claim through British Airways' designated process. British Airways later offered a nominal £50 goodwill payment but did not provide Plaintiff the requested cabin incident report or a meaningful resolution.

26. After the flight, Plaintiff sought medical care, including evaluation through the Department of Veterans Affairs and eye care for the blurred vision that began immediately after the blow.

27. Following the incident, Plaintiff experienced continuing migraines or headaches, vision disturbance, memory and concentration problems, cognitive fatigue, disorientation, balance problems, and other post-concussive symptoms.

28. Before the incident, Plaintiff was active, independent, mentally sharp, and capable of performing demanding legal work and extensive family, church, civic, and travel responsibilities. Family members, friends, and medical professionals observed a marked decline after the incident.

29. Plaintiff struggled to continue performing her demanding federal legal duties and retired from federal service in September 2025, earlier than she had planned.

30. Plaintiff has sustained past and future medical expenses, lost compensation and employment benefits, reduced earning capacity, physical pain, mental anguish, inconvenience, and loss of enjoyment of life.

## V. CLAIM FOR RELIEF

## COUNT I - LIABILITY UNDER ARTICLES 17 AND 21 OF THE MONTREAL CONVENTION

31. Plaintiff incorporates paragraphs 1 through 30 as though fully set forth here.

32. Article 17(1) makes a carrier liable for damage sustained in case of bodily injury when the accident causing the injury took place aboard the aircraft or during embarking or disembarking.

33. The forceful blow to Plaintiff's head by an on-duty cabin-crew member was an unexpected or unusual event external to Plaintiff and therefore an "accident" within Article 17.

34. The blow caused bodily injury, including concussion or traumatic brain injury and persistent physical, neurological, visual, and cognitive symptoms.

35. British Airways is liable under Article 17 for Plaintiff's compensatory damages.

36. To the extent Plaintiff's recoverable damages exceed the applicable Article 21 threshold, British Airways cannot avoid excess liability because the damage was caused by the negligence or other wrongful act or omission of its servants or agents acting within the scope of employment, including the crew member's use of force and the crew's delayed response to Plaintiff's requests for medical assistance.

5

37. As a direct and proximate result of the Article 17 accident, Plaintiff has suffered bodily injury; past and future medical, therapeutic, and rehabilitative expenses; lost wages, retirement contributions, employment benefits, and earning capacity; physical pain; mental anguish; inconvenience; diminished quality of life; and other compensatory damages to be established through discovery and at trial.

38. Plaintiff does not seek punitive, exemplary, or other non-compensatory damages prohibited by Article 29 of the Montreal Convention.

## VII. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that the Court:**

A. Enter judgment in favor of Plaintiff and against British Airways PLC;

B. Award all compensatory damages recoverable under Articles 17 and 21 of the Montreal Convention, in an amount to be determined by the jury;

C. Award taxable costs, pre-judgment interest to the extent permitted, and post-judgment interest under 28 U.S.C. § 1961; and

D. Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 31, 2026

Respectfully submitted,

**KAREN M. GIBBS, Pro Se**

2424 Kaywood Lane
Silver Spring, Maryland 20905
Telephone: 313-969-0249
Email: kmgibbs313@gmail.com